# EXHIBIT A

21STCV39538

Electronically FILED by Superior Court of California, County of Los Angeles on 10/26/2021 11:46 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Lozano,Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACIÓN JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
3M COMPANY (f/k/a Minnesota Mining and Manufacturing Co.)
(Additional Parties Attachment form is attached.)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
City of Pico Rivera

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California County of Los Angeles (Stanley Mosk Courthouse) 312 N. Spring Street, Los Angles, CA 90012 | CASE NUMBER: *(Número del Caso):* **21STCV39538** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John P. Fiske, Baron & Budd, P.C., 11440 West Bernardo Court, Suite 265, San Diego, CA 92127

| DATE: *(Fecha)* 10/26/2021 | Sherri R. Carter Executive Officer / Clerk of Court Clerk, by *(Secretario)* R. Lozano | Deputy *(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**[SEAL]**

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify):* TYCO FIRE PRODUCTS LP
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| City of Pico Rivera v. 3M Company; et al. | 21STCV39538 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff      ☒ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

3M COMPANY (f/k/a Minnesota Mining and Manufacturing Co.); E. I. DUPONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DUPONT DE NEMOURS, INC.; CORTEVA, INC.; CHEMGUARD, INC.; TYCO FIRE PRODUCTS LP; JOHNSON CONTROLS INTERNATIONAL, PLC; CENTRAL SPRINKLER, LLC; FIRE PRODUCTS GP HOLDING, LLC; KIDDE-FENWAL, INC.; KIDDE PLC, INC.; CHUBB FIRE, LTD.; UTC FIRE & SECURITY AMERICAS CORPORATION, INC.; CARRIER GLOBAL CORPORATION; RAYTHEON TECHNOLOGIES CORPORATION (f/k/a United Technologies Corporation); NATIONAL FOAM, INC.; ANGUS INTERNATIONAL SAFETY GROUP, LTD; BUCKEYE FIRE EQUIPMENT COMPANY; ARKEMA, INC.; BASF CORPORATION; CHEMDESIGN PRODUCTS, INC.; CLARIANT CORPORATION; CHEMICALS INCORPORATED; NATION FORD CHEMICAL COMPANY; AGC CHEMICALS AMERICAS INC.; AGC INC. f/k/a ASAHI GLASS CO., LTD; DEEPWATER CHEMICALS, INC.; DYNAX CORPORATION; ARCHROMA MANAGEMENT, LLC; ARCHROMA U.S., INC.; AND JOHN DOE DEFENDANTS 1-49

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

21STCV39538

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer:

Electronically FILED by Superior Court of California, County of Los Angeles on 10/26/2021 11:46 AM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Lozano, Deputy Clerk

**BARON & BUDD, P.C.**
John P. Fiske (CA Bar No. 249256)
11440 West Bernardo Court, Suite 265
San Diego, CA 92127
Telephone: (858) 251-7424

Celeste Evangelisti (CA Bar No. 225232)
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605

*Attorneys for Plaintiff City of Pico Rivera*

### IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
### IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| CITY OF PICO RIVERA,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY (f/k/a Minnesota Mining and Manufacturing Co.); E. I. DUPONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DUPONT DE NEMOURS, INC.; CORTEVA, INC.; CHEMGUARD, INC.; TYCO FIRE PRODUCTS LP; JOHNSON CONTROLS INTERNATIONAL, PLC; CENTRAL SPRINKLER, LLC; FIRE PRODUCTS GP HOLDING, LLC; KIDDE-FENWAL, INC.; KIDDE PLC, INC.; CHUBB FIRE, LTD.; UTC FIRE & SECURITY AMERICAS CORPORATION, INC.; CARRIER GLOBAL CORPORATION; RAYTHEON TECHNOLOGIES CORPORATION (f/k/a United Technologies Corporation); NATIONAL FOAM, INC.; ANGUS INTERNATIONAL SAFETY GROUP, LTD; BUCKEYE FIRE EQUIPMENT COMPANY; ARKEMA, INC.; BASF CORPORATION; CHEMDESIGN PRODUCTS, INC.; CLARIANT CORPORATION; CHEMICALS INCORPORATED; NATION FORD CHEMICAL COMPANY; AGC CHEMICALS AMERICAS INC.; AGC INC. f/k/a ASAHI GLASS CO., LTD; DEEPWATER | Case No.: **21STCV39538**<br><br>Date Filed:<br><br>COMPLAINT FOR DAMAGES AND OTHER RELIEF:<br><br>(1) STRICT PROD. LIABILITY (DEFECTIVE DESIGN – CONSUMER EXPECTATION TEST);<br>(2) STRICT PROD. LIABILITY (DESIGN DEFECT – RISK-BENEFIT TEST);<br>(3) STRICT PROD. LIABILITY (FAILURE TO WARN);<br>(4) PUBLIC NUISANCE;<br>(5) PRIVATE NUISANCE;<br>(6) TRESPASS;<br>(7) NEGLIGENCE (MANUFACTURER OR SUPPLIER – DUTY TO WARN);<br>(8) NEGLIGENCE (FAILURE TO RECALL);<br>(9) LIABILITY PURSUANT TO CA. CIV. CODE § 1882; and<br>(10) VIOLATION OF THE UNIFORM VOIDABLE TRANSFER ACT. |

| | |
|---|---|
| CHEMICALS, INC.; DYNAX CORPORATION; ARCHROMA MANAGEMENT, LLC; ARCHROMA U.S., INC.; AND JOHN DOE DEFENDANTS 1-49,<br><br>Defendants. | **UNLIMITED CIVIL CASE**<br>**JURY TRIAL DEMANDED**<br>Exempt from Filing Fees (Govt. Code § 6103); Deemed Verified (Code Civ. Proc. § 446) |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, CITY OF PICO RIVERA ("Plaintiff"), by and through its undersigned counsel, brings this action against Defendants, 3M Company (f/k/a Minnesota Mining and Manufacturing Co.), E. I. DuPont De Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, DuPont de Nemours, Inc., Corteva, Inc., Chemguard, Inc., Tyco Fire Products LP (individually and as successor-in-interest to The Ansul Company), Johnson Controls International, plc, Central Sprinkler, LLC, Fire Products GP Holding, LLC, Kidde-Fenwal, Inc., Kidde PLC, Inc., Chubb Fire, Ltd., UTC Fire & Security Americas Corporation, Inc., Carrier Global Corporation, Raytheon Technologies Corporation (f/k/a United Technologies Corporation), National Foam, Inc., Angus International Safety Group, Ltd., Buckeye Fire Equipment Company, Arkema, Inc., BASF Corporation, ChemDesign Products, Inc., Clariant Corporation, Chemicals Incorporated, Nation Ford Chemical Company, AGC Chemicals Americas, Inc., AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), Deepwater Chemicals, Inc., Dynax Corporation, Archroma Management, LLC, Archroma U.S., Inc., and John Doe Defendants 1-49 (collectively, "Defendants"), and alleges as follows:

## I.   SUMMARY OF THE CASE

1.   Plaintiff brings this action against Defendants to recover any and all past, present and future compensatory and/or consequential damages for the investigation, remediation, removal, disposal, treatment, and monitoring of the ongoing contamination of its surface water, groundwater, soil, sediment, lands, infrastructures, facilities, and properties caused and/or created by Defendants' products, diminished property value, punitive damages, attorneys' fees and costs,

1   as well as any and all other damages available as a result of the actions and/or inactions of

2   Defendants.

3       2.       Plaintiff is a municipal corporation, created pursuant to the laws of the State of

4   California. Plaintiff owns and operates a public water supply system that supplies drinking water

5   to more than 9,400 residents and businesses within Pico Rivera, California.

6       3.       Plaintiff has a property interest in the water it appropriates, treats, stores, and

7   distributes to the public, as well as its water sources, water supplies, wells, piping, distribution

8   system, treatment plants, and related lands, properties and facilities (collectively, "Plaintiff's

9   Property").

10      4.       Per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid

11  ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), have been detected in Plaintiff's Property,

12  including Plaintiff's groundwater supply.

13      5.       PFOA and PFOS are man-made compounds that are toxic and persistent in the

14  environment, do not biodegrade, move readily through soil and groundwater, and pose a significant

15  risk to human health and safety.

16      6.       At various times from the 1960s through today, Defendants designed, manufactured,

17  marketed, distributed, and/or sold PFOS, PFOA, the chemical precursors of PFOS and/or PFOA,

18  and/or products containing PFOS, PFOA, and/or their chemical precursors (collectively,

19  "Fluorosurfactant Products"), and/or assumed or acquired liabilities for the manufacture and/or

20  sale of Fluorosurfactant Products.

21      7.       Defendants' Fluorosurfactant Products include, but are not limited to, Teflon,

22  Scotchguard, waterproofing compounds, stainproofing compounds, paper and cloth coatings,

23  waxes, aqueous film-forming foam ("AFFF"), and various other products.

24      8.       AFFF is a firefighting agent used to control and extinguish Class B fuel fires and is

25  used at sites such as military bases, airports, petroleum refineries, and fire training centers.

26      9.       Defendants' AFFF contained PFOS, PFOA, and/or the chemical precursors to PFOS

27  and/or PFOA.

28

10.     Defendants designed, manufactured, formulated, marketed, distributed, sold, and/or assumed or acquired liabilities for the manufacture and/or sale of Fluorosurfactant Products with the knowledge that these toxic compounds would be released into the environment during the intended use of these Products, even when used as directed or intended by Defendants.

11.     Upon information and belief, at all times pertinent herein, Defendants' Fluorosurfactant Products have been released, used, stored, released, and/or disposed of at, near, and/or in the vicinity of Plaintiff's Property, including Plaintiff's water supplies. During these activities, Defendants' Fluorosurfactant Products were stored, used, cleaned up, and/or disposed of as directed and intended by the Defendants, which allowed PFOS, PFOA, and/or their chemical precursors to enter the environment, and migrate through the soil, sediment, surface water, and groundwater, thereby contaminating Plaintiff's Property.

12.     As a result of the use of Defendants' Fluorosurfactant Products for their intended purpose, PFOS, PFOA, and/or their chemical precursors have been detected in Plaintiff's Property at elevated levels.

13.     Plaintiff's Property has been, and continues to be, contaminated by Defendants' Fluorosurfactant Products.

14.     At all times pertinent herein, Plaintiff did not know, nor should Plaintiff have known, of the ongoing contamination of its Property through the use, release, storage, and/or disposal of Defendants' Fluorosurfactant Products as Defendants did not disclose the toxic nature and harmful effects of these Fluorosurfactant Products.

15.     Through this action, Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, filter, dispose of, treat, and monitor the PFOS and PFOA contamination of Plaintiff's Property caused by the use of Defendants' Fluorosurfactant Products on Plaintiff's Property; as well as any and all other damages recoverable under state and/or applicable federal laws. Plaintiff also seeks damages and restitution for the diminution of value of Plaintiff's Property, as well as punitive damages and reasonable attorneys' fees and costs.

## II. PARTIES

16.   Plaintiff City of Pico Rivera is a municipal corporation created pursuant to the laws of the State of California and with its principal address located at 6615 Passons Boulevard, Pico Rivera, California 90660.

17.   Plaintiff owns and operates public drinking water system CA1910042, which is subject to the rules and regulations of the California State Water Resources Control Board.

18.   Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, distributed, sold, and/or assumed or acquired liabilities for the manufacture and/or sale of Fluorosurfactant Products that have and continue to contaminate Plaintiff's Property:

    a.   Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a Delaware corporation authorized to conduct business in California, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. Upon information and belief, 3M is the only company that manufactured and/or sold AFFF containing PFOS in the United States, including California.

    b.   Defendant E. I. DuPont De Nemours and Company ("DuPont") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. DuPont is registered to do business in the State of California.

    c.   Defendant The Chemours Company ("Chemours") is a Delaware corporation with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899. Chemours is registered to do business in the State of California.

    d.   In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising

from the manufacture and sale of fluorosurfactants and the products that contain fluorosurfactants.

e. Defendant The Chemours Company FC, LLC ("Chemours FC"), successor-in-interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company with its principal place of business located at 1007 Market Street Wilmington, Delaware, 19899. Chemours FC is registered to do business in the State of California.

f. Defendant DuPont de Nemours, Inc. is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. Upon information and belief, DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont. DowDuPont, Inc. was subsequently divided into three publicly traded companies and on June 1, 2019, DowDuPont, Inc. changed its registered name to DuPont de Nemours, Inc. ("New DuPont").

g. Defendant Corteva, Inc. is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805. Upon information and belief, Corteva, Inc. is one of the aforementioned spin-off companies from DowDuPont, Inc., and is believed to have assumed some of the PFAS liabilities of the former DuPont. Corteva, Inc. is registered to do business in California.

h. Defendant Chemguard, Inc. ("Chemguard") is a Texas corporation with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. Upon information and belief, Chemguard does and/or has done business throughout the United States, including in the State of California.

i. Upon information and belief, Chemguard acquired Williams Fire and Hazard Control, Inc. ("WFHC"). Upon information and belief, WFHC has and continues

1   to sell and/or distribute AFFF throughout the United States, including in the State
2   of California.

3   j.  Defendant Tyco Fire Products LP ("Tyco") is a Delaware limited partnership with
4       its principal place of business located at 1400 Pennbrook Parkway, Lansdale,
5       Pennsylvania 19446. Tyco acquired Chemguard in 2011.

6   k.  Tyco is the successor-in-interest to The Ansul Company ("Ansul") and
7       manufactures the Ansul brand of products (Ansul and/or Tyco as the successor-in-
8       interest to Ansul will be referred to collectively as "Tyco/Ansul"). Upon
9       information and belief, Tyco/Ansul does and/or has done business throughout the
10      United States, including in the State of California.

11  l.  Defendant Johnson Controls International, plc ("JCI plc") is an Irish public limited
12      company with its principal place of business located at One Albert Quay, Cork,
13      Ireland.

14  m.  Defendant Central Sprinkler, LLC is a Delaware limited liability company with its
15      principal place of business located at 1400 Pennbrook Parkway, Lansdale,
16      Pennsylvania. Upon information and belief, this Defendant is a limited partner of
17      Tyco. Upon information and belief, Chemguard is wholly-owned by Central
18      Sprinkler, LLC. Upon information and belief, Central Sprinkler, LLC has
19      conducted and/or availed itself of doing business throughout the United States,
20      including in California.

21  n.  Defendant Fire Products GP Holding, LLC is a Delaware limited liability company
22      with its principal place of business located at 9 Roszel Road, Princeton, New Jersey
23      08540. Upon information and belief, this Defendant is a general partner of Tyco.
24      Fire Products GP Holding, LLC is registered to do business in California.

25  o.  Defendant Kidde-Fenwal, Inc. ("Kidde") is a Delaware corporation with its
26      principal place of business located at One Financial Plaza, Hartford, Connecticut
27      06101. Upon information and belief, Kidde was part of UTC Fire & Security

28

7

Complaint for Damages and Other Relief

1    Americas Corporation, Inc. Upon information and belief, Kidde-Fenwal, Inc. is the

2    successor-in-interest to Kidde Fire Fighting, Inc. (collectively, "Kidde/Kidde

3    Fire"). Upon information and belief, Kidde/Kidde Fire does and/or has done

4    business throughout the United States, including in the State of California.

5    p. Defendant Kidde PLC, Inc. is a Delaware corporation with its principal place of

6    business located at 9 Farm Springs Road, Farmington, Connecticut 06032. Upon

7    information and belief, Kidde PLC, Inc. was part of UTC Fire & Security Americas

8    Corporation, Inc. Upon information and belief, Kidde PLC, Inc. does and/or has

9    done business throughout the United States, including in the State of California.

10   q. Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, United

11   Kingdom registration number 134210, with offices at Littleton Road, Ashford, Middlesex,

12   United Kingdom TW15 1TZ. Upon information and belief, Chubb is or has been composed

13   of different subsidiaries and/or divisions, including but not limited to, Chubb Fire &

14   Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb

15   National Foam, Inc. Upon information and belief, Chubb was part of UTC Fire & Security

16   Americas Corporation, Inc.

17   r. Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware

18   corporation with its principal place of business at 13995 Pasteur Blvd., Palm Beach

19   Gardens, Florida 33418. Upon information and belief, UTC was a division of

20   United Technologies Corporation. UTC is registered to do business in California.

21   s. Defendant Carrier Global Corporation is a Delaware corporation with its principal

22   place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida

23   33418. Carrier Global Corporation is registered to do business in California.

24   t. Defendant Raytheon Technologies Corporation (f/k/a United Technologies

25   Corporation) ("Raytheon Tech f/k/a United Tech") is a Delaware corporation with

26   its principal place of business at 10 Farm Springs Road, Farmington, Connecticut

27   06032. Raytheon Tech f/k/a United Tech is registered to do business in California.

28
Complaint for Damages and Other Relief

u. Defendant National Foam, Inc. is a Delaware corporation with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. National Foam, Inc. is a subsidiary of Angus International Safety Group, Ltd. Upon information and belief, National Foam, Inc. manufactures the Angus brand of AFFF products. National Foam, Inc. does and/or has done business throughout the United States, including in the State of California.

v. Defendant Angus International Safety Group, Ltd. is a foreign private limited company, United Kingdom registration number 8441763, with offices at Station Road, High Bentham, Near Lancaster, United Kingdom. Upon information and belief, Angus International Safety Group, Ltd. is the parent company of National Foam, Inc.

w. Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. Buckeye is registered to do business in California.

x. Defendant Arkema, Inc. is a Pennsylvania corporation with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is registered to do business in California.

y. Defendant BASF Corporation is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF Corporation acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals. BASF Corporation is registered to do business in California. Upon information and belief, Ciba-Geigy Corporation and/or Ciba Specialty Chemicals does and/or has done business throughout the United States, including California.

z. Defendant ChemDesign Products, Inc. ("CDPI") is a Delaware corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

Upon information and belief, CDPI conducts and/or avails itself of doing business throughout the United States, including California.

aa. Defendant Clariant Corporation is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205. Clariant Corporation is registered to do business in California.

bb. Defendant Chemicals Incorporated is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521. Chemicals Incorporated is registered to do business in California.

cc. Defendant Nation Ford Chemical Company is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715. Upon information and belief, Nation Ford Chemical Company conducts and/or avails itself of doing business throughout the United States, including California.

dd. Defendant AGC Chemicals Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd. AGC America is registered to do business in California.

ee. Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

ff. Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward, Oklahoma 73801. Upon information and belief, Deepwater conducts and/or avails itself of doing business throughout the United States, including California.

gg. Defendant Dynax Corporation is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. In 1991, Dynax Corporation entered the market, quickly becoming a leading global producer of fluorosurfactants and fluorochemical foam stabilizers used in AFFF. Upon information and belief, Dynax Corporation conducts and/or avails itself of doing business throughout the United States, including California.

hh. Defendant Archroma Management, LLC, is a foreign limited liability company registered in Switzerland, with a principal business address of Neuhofstrasse 11, 4153 Reinach, Basel-Land, Switzerland.

ii. Defendant Archroma U.S., Inc. is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF. Upon information and belief, Archroma U.S., Inc. conducts and/or avails itself of doing business throughout the United States, including California.

jj. Upon information and belief, Defendants John Doe 1-49 were designers, manufacturers, marketers, distributors, and/or sellers of Fluorosurfactant Products that have and continue to contaminate Plaintiff's Property. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time Plaintiff will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

19. Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

20. When the term "Defendants" is used alone, it refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or

1   properly control or direct their employees, while engaged in the management, direction, operation

2   or control of the affairs of Defendants, and did so while acting within the scope of their

3   employment or agency.

### III. JURISDICTION AND VENUE

5   21.   This Court has jurisdiction over this action pursuant to California Constitution Article

6   VI, Section 10, which grants the Superior Court "original jurisdiction in all cases except those

7   given by statute to other trial courts." The statutes under which this action is brought do not grant

8   jurisdiction to any other trial court.

9   22.   This Court has jurisdiction over Defendants because, based on information and belief,

10   each Defendant is a corporation or other business that has sufficient minimum contacts in

11   California, or otherwise intentionally avails itself of the California market either through the

12   distribution or sale of products containing PFAS in the State of California or by having

13   manufacturing, distribution, offices, or other facilities located in California so as to render the

14   exercise of jurisdiction over it by the California courts consistent with traditional notions of fair

15   play and substantial justice.

16   23.   Venue is proper in the Superior Court of California, County of Los Angeles, because

17   the real property that is the subject of this action is located in Los Angeles County.

### IV. FACTUAL ALLEGATIONS

#### A. THE CONTAMINANTS: PFOA & PFOS

24.   PFOA and PFOS are man-made chemicals within a class known as perfluoroalkyl acid ("PFAA"). PFAAs are part of the larger chemical family known as PFAS. PFAAs are composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent. PFOA and PFOS contain eight carbon-fluorine bonds. For this reason, they are sometimes referred to as "C8."

Complaint for Damages and Other Relief

25.     PFOA and PFOS are highly water soluble, which increases the rate at which they spread throughout the environment, contaminating soil, groundwater, and surface water.  Their mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.[1]

26.     PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  They have been found globally in water, soil, air, as well as in human food supplies, breast milk, umbilical cord blood, and human serum.[2]

27.     PFOA and PFOS are persistent in the human body.  A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[3]

28.     Since they were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS.

29.     According to the United States Environmental Protection Agency ("EPA"), "…studies indicate that exposure of PFOA and PFOS over certain levels may result in…developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[4]

30.     EPA has also warned that "there is suggestive evidence of carcinogenic potential for PFOS."[5]

---

[1] See EPA, Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA), EPA Document Number: 822-R-16-005 (May 2016) at 16; and Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS), EPA Document Number: 822-R-16-004 (May 2016) at 16, both available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[2] See EPA Document Number: 822-R-16-005 (May 2016) at 18-20, 25-27; and EPA Document Number: 822-R-16-004 (May 2016) at 19-21, 26-28.
[3] See EPA Document Number: 822-R-16-005 (May 2016) at 55; and EPA Document Number: 822-R-16-004 (May 2016) at 55.
[4] See "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.
[5] See "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Document Number: 822-R-16-002, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

13

31.     EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example....an airfield at which [PFOA/PFOS] were used for firefighting."[6]

32.     EPA has issued Health Advisory Levels of 70 parts per trillion ("ppt") for PFOA and PFOS found in drinking water. When both PFOA and PFOS are found in drinking water, the combined concentrations should not exceed 70 ppt.

33.     The State of California's Division of Drinking Water established notification levels of 6.5 ppt for PFOS and 5.1 ppt for PFOA, and lowered the State's response levels from 70 ppt for PFOS and PFOA, to 40 ppt for PFOS and 10 ppt for PFOA.

**B.   DEFENDANTS' FLUOROSURFACTANT PRODUCTS**

34.     PFOA, PFOS, and their chemical precursors are used to make a variety of consumer and industrial goods sold, supplied, used, and disposed of in the State of California, including but not limited to nonstick cookware, waterproofing waxes, stain-preventing coatings, and AFFF.

35.     When used as the Defendants intended and directed, Defendants' Fluorosurfactant Products release PFAS, including PFOA and/or PFOS, into the environment.

36.     Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

37.     The use of Defendants' Fluorosurfactant Products, including but not limited to AFFF, as directed and intended by the Defendants allowed PFOA, PFOS, and/or their precursor chemicals to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface

---

[6] *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number: 800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-health-advisories-pfoa-and-pfos.

1   and into the groundwater, thereby contaminating the surface water, soil, sediment, and

2   groundwater, as well as causing other extensive and ongoing damage to Plaintiff's Property.

3   38.   Due to the persistent nature, among other things, of PFOA and PFOS, these chemicals

4   have caused, and continue to cause, injury and damage to Plaintiff and Plaintiff's Property.

5   **C. DEFENDANTS' KNOWLEDGE OF PFOA AND PFOS HAZARDS**

6   39.   On information and belief, by the early 1980s, Defendants knew, or reasonably

7   should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed

8   in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily

9   migrate through the subsurface, mix easily with groundwater, resist natural degradation, render

10   drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies

11   only at substantial expense.

12   40.   Defendants also knew or reasonable should have known that PFOA and PFOS could

13   be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver,

14   kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS

15   are known carcinogens that cause genetic damage.

16   41.   In 1980, 3M published data in peer reviewed literature showing that humans retain

17   PFOS in their bodies for years. Based on that data, 3M estimated it could take a person up to 1.5

18   years to clear just half of the accumulated PFOS from their body after all exposures had ceased.[7]

19   42.   By the early 1980s, the industry suspected a correlation between PFOS exposure and

20   human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers'

21   bodies and birth defects in children of workers.

22   43.   In 1981, DuPont tested for and found PFOA in the blood of female plant workers in

23   Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed

24

25

26   [7] *See* Letter from 3M to Office of Pollution Prevention and Toxics, EPA titled "TSCA 8e Supplemental Submission, Docket Nos. 8EHQ-0373/0374 New Data on Half Life of Perfluorochemicals in Serum," available at

27   http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.

28

workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

44.   Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern. It is certainly possible that ... exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

45.   Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.

46.   From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold Fluorosurfactant Products, including Teflon nonstick cookware, and more recently PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

47.   Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and contaminated Plaintiff's Property.

48.   DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

49.   By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental

---

[8] See Memorandum "C-8 Blood Sampling Results, Births and Pregnancies," available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[9] See Memorandum "Organic Fluorine Levels," August 31, 1984, available at http://www.ewg.org/research/dupont-hid-teflon-pollution-decades.
[10] See, e.g., Fred Biddle, "DuPont confronted over chemical's safety," Wilmington News Journal (Apr. 13, 2003). The Wilmington News Journal is published in Wilmington, Ohio.

1   Administrative Penalty in Agency History."[11] The EPA fined DuPont for violating the Toxic

2   Substances Control Act "Section 8(e)—the requirement that companies report to the EPA

3   substantial risk information about chemicals they manufacture, process or distribute in

4   commerce."[12]

5       50.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA,

6   which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a

7   class action over DuPont's releases from the Washington Works plant had reviewed the available

8   scientific evidence and notified DuPont of a "probable link"[13] between PFOA exposure and the

9   serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[14]

10   By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA

11   and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and

12   ulcerative colitis.

13       51.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new

14   publicly-traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its

15   perfluorinated chemical liabilities into the lap of the new Chemours.

16       52.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1)

17   designed, manufactured, marketed, distributed, and/or sold Fluorosurfactant Products; (2) issued

18   instructions on how Fluorosurfactant Products should be used and disposed of (namely, by

19   washing the foam into the soil or wastewater system), thus improperly permitting PFOA and/or

20   PFOS to contaminate the surface water, soil, and groundwater in and around the Plaintiff's

21   Property; (3) failed to recall and/or warn the users of Fluorosurfactant Products, negligently

22

---

[11] $16.5 million.

[12] U.S. Envtl. Prot. Agency, Reference News Release, "EPA Settles PFOA Case Against DuPont for Largest
Environmental Administrative Penalty in Agency History" (Dec. 14, 2005),
https://www.epa.gov/enforcement/reference-news-release-epa-settles-pfoa-case-against-dupont-largest-
environmental (last viewed on January 30, 2018).

[13] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not
that among class members a connection exists between PFOA/C8 exposure and a particular human disease.

[14] See The C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the
C8 Health Project (July 15, 2011),
http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf (last viewed on
January 28, 2018).

23

24

25

26

27

28

17

1  designed products containing or degrading into PFOA and/or PFOS, of the dangers of surface

2  water, soil, and groundwater contamination as a result of standard use and disposal of these

3  products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the

4  users of Fluorosurfactant Products, notwithstanding the fact that Defendants knew the identity of

5  the purchasers of the Fluorosurfactant Products.

6        53.    As a direct result of Defendants' actions and/or inactions alleged in this Complaint,

7  Plaintiff's Property has been and will continue to be contaminated with PFAS, including PFOA

8  and PFOS, creating an environmental hazard, unless such contamination is remediated. As a direct

9  and proximate result of Defendants' actions and/or inactions, Plaintiff must assess, evaluate,

10  investigate, monitor, remove, clean up, correct, treat, and remediate PFOA and PFOS

11  contamination on its Property at significant expense, loss and damage.

12        54.    Defendants had a duty and breached their duty to evaluate and test such

13  Fluorosurfactant Products adequately and thoroughly to determine their potential human health

14  and environmental impacts before they sold such products. They also had a duty and breached

15  their duty to minimize the environmental harm caused by Fluorosurfactant Products.

16  **D. THE IMPACT OF PFOA AND PFOS ON PLAINTIFF'S PROPERTY**

17        55.    PFOA and PFOS have been detected in varying amounts, at varying times in water

18  extracted from Plaintiff's Property. PFOA and PFOS have been detected and/or are present in

19  certain of areas of Plaintiff's Property. PFOA and PFOS have been detected at Plaintiff's Property

20  at levels that are greater than the current State and/or Federal Advisory Levels. The detection

21  and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA

22  and PFOS, in Plaintiff's Property in varying amounts and at varying times has resulted, and will

23  continue to result, in significant injuries and damage to Plaintiff.

24        56.    Upon information and belief, the invasion of Plaintiff's Property with PFOA and

25  PFOS is recurring, resulting in new harm to Plaintiff on each occasion.

26        57.    The injuries to Plaintiff caused by Defendants' conduct and Fluorosurfactant

27  Products, including but not limited to AFFF, constitute an unreasonable interference with, and

1   damage to, Plaintiff and Plaintiff's Property. Plaintiff's interests in protecting its Property

2   constitute a reason for seeking damages sufficient to restore such Property to its pre-contamination

3   condition, in addition to the other damages sought herein.

4   **FIRST CAUSE OF ACTION**

5   STRICT LIABILITY – DEFECTIVE DESIGN – CONSUMER EXPECTATION TEST

6       58.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

7       59.     Plaintiff was harmed by Fluorosurfactant Products which were designed,

8   manufactured, formulated, marketed, sold and/or distributed by Defendants, or that Defendants

9   assumed or acquired liabilities for, and which were defectively designed, did not include sufficient

10  instructions, and did not include sufficient warning of potential safety hazards.

11      60.     Defendants' Fluorosurfactant Products did not perform as safely as an ordinary

12  consumer would have expected them to perform when used or misused in an intended or

13  reasonably foreseeable way.

14      61.     Defendants represented, asserted, claimed and/or warranted that their

15  Fluorosurfactant Products could be used in conformity with accompanying instructions and labels

16  in a manner that would not cause injury or damage.

17      62.     As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and

18  marketers of Fluorosurfactant Products, Defendants owed a duty to all persons whom Defendants'

19  products might foreseeably harm, including Plaintiff, not to manufacture, sell, or market any

20  product which is unreasonably dangerous for its intended and foreseeable uses.

21      63.     Defendants' Fluorosurfactant Products used on or in the vicinity of Plaintiff's

22  Property were used in a reasonably foreseeable manner and without substantial change in the

23  condition in which the Products were sold.

24      64.     Defendants knew, or should have known, that use of Defendants' Fluorosurfactant

25  Products in their intended manner would result in the spillage, discharge, disposal, or release of

26  PFOA, PFOS, and/or their chemical precursors into the surface water, soil, and groundwater.

27

28

19

65. Furthermore, Defendants knew, or should have known, that their Fluorosurfactant Products were toxic, could not be contained, and do not readily degrade in the environment.

66. Plaintiff was, is, and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

67. Defendants' Fluorosurfactant Products' failure to perform safely was a substantial factor in causing Plaintiff's harm.

68. As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and all other equitable and applicable damages.

## SECOND CAUSE OF ACTION

STRICT LIABILITY – DESIGN DEFECT – RISK-BENEFIT TEST

69. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

70. Plaintiff was harmed by Fluorosurfactant Products that were designed, manufactured, marketed, sold, and/or distributed by Defendants, or that Defendants assumed or acquired liabilities for.

71. Plaintiff was, is, and will continue to be harmed by Defendants' defectively designed Fluorosurfactant Products.

72. The design of Defendants' Fluorosurfactant Products was a substantial factor in causing harm to Plaintiff.

73. The gravity of the environmental harm resulting from Defendants' Fluorosurfactant Products was, is, and will be enormous because PFOA and PFOS contamination is widespread, persistent, and toxic.

74. The likelihood that this harm would occur was, is, and will be very high because Defendants knew and/or should have known that Defendants' Fluorosurfactant Products were toxic, could not be contained, and do not readily degrade in the environment.

75. At the time of manufacture, there were safer alternative designs that were feasible, cost effective, and advantageous, including not using PFOS, PFOA and/or their precursor chemicals in products.

76. Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

77. As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and all other equitable and applicable damages.

### THIRD CAUSE OF ACTION

### STRICT LIABILITY – FAILURE TO WARN

78. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

79. As manufacturers, distributors, suppliers, sellers, and marketers of Fluorosurfactant Products, Defendants had a duty to issue warnings to Plaintiff, the public, water providers, and public officials of the risks posed by PFOA and PFOS.

80. Defendants knew that their Fluorosurfactant Products would be purchased, transported, stored, handled, and used without notice of the hazards that PFOA and PFOS pose to human health and the environment.

81. Defendants breached their duty to warn by unreasonably failing to provide Plaintiff, public officials, purchasers, downstream handlers, and/or the general public with warnings about

the potential and/or actual contamination of the environment by PFOA and PFOS, despite Defendants' knowledge that PFOA and PFOS were real and potential threats to the environment.

82. Fluorosurfactant Products purchased or otherwise acquired from Defendants were used, discharged, and/or released at and/or in the vicinity of Plaintiff's Property.

83. Defendants' Fluorosurfactant Products were used in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

84. Defendants' Fluorosurfactant Products used on and/or in the vicinity of Plaintiff's Property were defective in design and unreasonably dangerous for the reasons set forth above.

85. Despite the known and/or foreseeable environmental and human health hazards associated with the use and/or disposal of Defendants' Fluorosurfactant Products at, near, and/or in the vicinity of Plaintiff's Property, including contamination of Plaintiff's Property with PFOA and/or PFOS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

86. In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their Fluorosurfactant Products.

87. As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and all other equitable and applicable damages.

## FOURTH CAUSE OF ACTION

### PUBLIC NUISANCE

88. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

89. Defendants designed, manufactured, distributed, marketed, sold, and/or assumed or acquired liabilities for the manufacture and/or sale of Fluorosurfactant Products in a manner that created, or participated in creating, a public nuisance that unreasonably and substantially interferes

22

with the use and enjoyment of Plaintiff's Property, and unreasonably endangers or injures the health, safety, and comfort of the general public and Plaintiff, causing inconvenience and annoyance.

90. The unreasonable and substantial interference with the use and enjoyment of Plaintiff's Property includes but is not limited to: the contamination of Plaintiff's Property, including Plaintiff's water supply source, with PFOS, PFOA, and/or their chemical precursors; and the exposure to known toxic chemicals manufactured and/or sold by Defendants.

91. The presence of PFOS, PFOA, and/or their chemical precursors causes significant costs, inconvenience, and annoyance to Plaintiff, who is charged with supplying potable drinking water to residents and businesses in Plaintiff's service area.

92. The contamination affects a substantial number of people who rely upon Plaintiff for commercial and recreational purposes and interferes with the rights of the public at large to clean and safe drinking water resources and environment.

93. The seriousness of the environmental and human health risk far outweighs any social utility of Defendants' conduct in manufacturing Fluorosurfactant Products and concealing the dangers those Products posed to human health and the environment.

94. As a result of the actual and threatened PFOA and PFOS contamination caused by Defendants' conduct, Plaintiff has suffered, and will continue to suffer, harm that is different from the type of harm suffered by the general public, and Plaintiff has incurred, and will continue to incur, substantial costs to remove the contamination from its Property.

95. Plaintiff did not consent to the conduct that resulted in the contamination of its Property.

96. Defendants' conduct was a substantial factor in causing the harm to Plaintiff.

97. Defendants have, by their acts and omissions set forth above, among other things, knowingly unleashed long-lasting and ongoing PFOS and PFOA contamination, and threat of PFOS and PFOA contamination, upon Plaintiff's Property.

1    98.      Defendants knew or, in the exercise of reasonable care, should have known that the
2    use and introduction of their Fluorosurfactant Products into the environment would and has
3    continuously, unreasonably and seriously endangered and interfered with the ordinary safety, use,
4    benefit, and enjoyment of Plaintiff's Property.

5    99.      As a direct and proximate result of Defendants' above described acts and omissions,
6    Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS
7    contamination of its Property, including but not limited to the investigation, monitoring, treatment,
8    testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating,
9    maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and
10   all other equitable and applicable damages.

11   ## FIFTH CAUSE OF ACTION
12   PRIVATE NUISANCE

13   100.     Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.
14   101.     Plaintiff's Property has been, and continues to be, contaminated by PFOS, PFOA,
15   and/or their chemical precursors as a direct and proximate result of the acts and omissions of
16   Defendants as set forth above.

17   102.     Actual and threatened PFAS contamination caused by Defendants' conduct has
18   caused, and continues to cause, injury to Plaintiff in the form of present and serious interference
19   with the ordinary safety, use, benefit, and/or enjoyment of Plaintiff's Property.

20   103.     As a direct and proximate result of Defendants' above described acts and omissions,
21   Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS
22   contamination of its Property, including but not limited to the investigation, monitoring, treatment,
23   testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating,
24   maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and
25   all other equitable and applicable damages.

26   ## SIXTH CAUSE OF ACTION
27   TRESPASS

28                                       24

104. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

105. Plaintiff is the owner and/or actual possessor of Plaintiff's Property and other relevant structures located thereon. Defendants knew, or in the exercise of reasonable care should have known, that PFOA and/or PFOS contaminates soil, surface, and groundwater, including the property and other rights of Plaintiff.

106. Defendants failed to properly warn against the use of Fluorosurfactant Products such that they proximately caused and continue to cause PFOA and/or PFOS to contaminate Plaintiff's Property, including but not limited to its soil, sediment, surface water, groundwater, and other structures located thereon.

107. The contamination of Plaintiff's Property has varied over time and has not yet ceased. PFOA and/or PFOS continue to migrate onto and enter Plaintiff's Property. The contamination is reasonably abatable.

108. Plaintiff has not consented to, and does not consent to, this trespass or contamination.

109. Defendants knew or reasonably should have known that Plaintiff would not consent to this trespass.

110. Plaintiff was, is, and will continue to be harmed by the entry of Defendants' Fluorosurfactant Products onto its Property.

111. As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and all other equitable and applicable damages.

## SEVENTH CAUSE OF ACTION

NEGLIGENCE – MANUFACTURER OR SUPPLIER – DUTY TO WARN

112. Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

113.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and/or handlers of Fluorosurfactant Products, and/or as those who assumed or acquired liabilities for the manufacture and sale of Fluorosurfactant Products, Defendants owed a duty to Plaintiff, as well as to all persons whom Defendants' Fluorosurfactant Products might foreseeably harm, to exercise due care in the instructing, labeling, and warning of the handling, control, use, and disposal of Defendants' Fluorosurfactant Products.

114.    Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate soil and water resources, and present significant risks to human health and the environment, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold Fluorosurfactant Products; (b) issued instructions on how Fluorosurfactant Products should be used and disposed of, thus improperly permitting PFOA and/or PFOS to enter and contaminate Plaintiff's Property; (c) failed to warn the users of Fluorosurfactant Products of the dangers of soil and water contamination as a result of standard use and disposal of these products; and (d) failed and refused to issue the appropriate warnings to the users of Fluorosurfactant Products regarding the proper use and disposal of these products, notwithstanding the fact that Defendants knew, or could determine with reasonable certainty, the identity of the purchasers of their Fluorosurfactant Products.

115.    A reasonable manufacturer, seller, or distributor, under the same or similar circumstances would have warned of the danger or instructed on the safe use of Fluorosurfactant Products.

116.    Plaintiff was, is, and will continue to be harmed.

117.    Defendants' failure to warn or instruct was a substantial factor in causing Plaintiff's harm.

118.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

119.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and all other equitable and applicable damages.

## EIGHTH CAUSE OF ACTION

### NEGLIGENCE – FAILURE TO RECALL

120.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

121.    Defendants' Fluorosurfactant Products were designed, manufactured, marketed, distributed and sold without adequate warning of toxicity, potential human health risks and environmental hazards.

122.    Defendants were negligent by not using reasonable care to warn or instruct about the risks associated with their Fluorosurfactant Products.

123.    Defendants knew or reasonably should have known that their Fluorosurfactant Products were dangerous or likely to be dangerous when used or misused in a reasonably foreseeable manner.

124.    Defendants knew or reasonably should have known that users and third parties would not realize the dangers.

125.    Defendants became aware of the human health risks and environmental hazards presented by their Fluorosurfactant Products by no later than the year 2000.

126.    Defendants failed to recall their Fluorosurfactant Products.

127.    A reasonable manufacturer, seller, or distributor, under the same or similar circumstances would have warned of the dangers or instructed on the safe use of Fluorosurfactant Products.

128.    Plaintiff was, is, and will continue to be harmed.

Complaint for Damages and Other Relief

129.    Defendants' failure to recall their Fluorosurfactant Products was a substantial factor in causing Plaintiff's harm.

130.    Defendants' conduct lacked any care and was an extreme departure from what a reasonably careful company would do in the same situation to prevent harm to others and the environment, and thus Defendants were grossly negligent.

131.    As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and all other equitable and applicable damages.

## NINTH CAUSE OF ACTION

### LIABILITY PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1882

132.    Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

133.    Plaintiff is a municipal corporation operating a public water system in California. The groundwater that supplies Plaintiff's wells is property owned or used by Plaintiff to provide utility services. The water pumped from Plaintiff's wells is property owned or used by Plaintiff to provide utility services.

134.    California Civil Code Section 1882.1 states, "[a] utility may bring a civil action for damages against any person who commits, authorizes, solicits, aids, abets, or attempts any of the following acts:

    a.  Diverts, or causes to be diverted, utility services by any means whatsoever.

    b.  Makes, or causes to be made, any connection or reconnection with property owned or used by the utility to provide utility service without the authorization or consent of the utility.

c.  Prevents any utility meter, or other device used in determining the charge for utility services, from accurately performing its measuring function by tampering or by any other means.

d.  Tampers with any property owned or used by the utility to provide utility services.

e.  Uses or receives the direct benefit of all, or a portion, of the utility service with knowledge of, or reason to believe that, the diversion, tampering, or unauthorized connection existed at the time of the use, or that the use or receipt, was without the authorization or consent of the utility."

135.  By causing the introduction of PFOS, PFOA, and/or their chemical precursors into Plaintiff's wells and the groundwater that supplies those wells, Defendants injured, altered, interfered with, and/or otherwise prevented property owned or used by Plaintiff from performing its normal or customary function in Plaintiff's provision of utility services.

136.  As a direct and proximate result of Defendants' above described acts and omissions, Plaintiff has incurred, continues to incur, and/or will incur costs and damages related to the PFAS contamination of its Property, including but not limited to the investigation, monitoring, treatment, testing, remediation, removal, filtration, and/or disposal of the PFAS contamination, operating, maintenance and consulting costs, legal fees, punitive damages, diminution of property value, and all other equitable and applicable damages.

137.  "In any civil action brought pursuant to Section 1882.1, the utility may recover as damages three times the amount of actual damages, if any, plus the cost of the suit and reasonable attorney's fees."  California Civil Code Section 1882.2.

### TENTH CAUSE OF ACTION

### VIOLATION OF THE UNIFORM VOIDABLE TRANSFER ACT

138.  Plaintiff realleges and reaffirms all allegations set forth in the preceding paragraphs.

139.  Plaintiff seeks equitable and other relief pursuant to the Uniform Voidable Transfer Act ("UVTA") as adopted by the State of California in Cal. Civ. Code Ann. § 3439, against E. I.

1  DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC,

2  Corteva, Inc., and DuPont De Nemours, Inc. (collectively, the "UVTA Defendants").

3    140.   Pursuant to Cal. Civ. Code Ann. § 3439, "[a] transfer made or an obligation incurred

4  by a debtor is voidable as to a creditor, whether the claim of the creditor arose before, or within a

5  reasonable time not to exceed four years after, the transfer was made or the obligation was incurred,

6  if the debtor made the transfer or incurred the obligation as follows:

7         a.   With actual intent to hinder, delay, or defraud any creditor of the debtor;

8         b.   Without receiving a reasonably equivalent value in exchange for the transfer or

9             obligation and the debtor either:

10             i.   Was engaged or was about to engage in a business or a transaction for which

11                 the remaining assets of the debtor were unreasonably small in relation to the

12                 business or transaction.

13             ii.  Intended to incur, or believed or reasonably should have believed that the

14                 debtor would incur, debts beyond the debtor's ability to pay as they became

15                 due."

16    141.   Further, Cal. Civ. Code Ann. § 3439 states that, "[i]n determining actual intent under

17  paragraph (1) of subdivision (a), consideration may be given, among other factors, to any and all

18  of the following: to all relevant factors including, but not limited to, the following: [...] whether

19  before the transfer was made or obligation was incurred, the debtor had been sued or threatened

20  with suit; whether the transfer was of substantially all of the debtor's assets; [...] whether the value

21  of the consideration received by the debtor was reasonably equivalent to the value of the asset

22  transferred or the amount of the obligation incurred."

23    142.   Upon information and belief, in February 2014, E. I. DuPont de Nemours and

24  Company formed The Chemours Company as a wholly-owned subsidiary and used it to spin off

25  DuPont's "Performance Chemicals" business line in July 2015.

26    143.   Upon information and belief, at the time of the spinoff, DuPont's Performance

27  Chemicals division contained the Fluorosurfactant Products business segments. In addition to the

28  _____

                                     30

1    transfer of the Performance Chemicals division, The Chemours Company accepted broad

2    assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFAS.

3          144.    Upon information and belief, at the time of the transfer of its Performance Chemicals

4    business to The Chemours Company, DuPont had been sued, threatened with suit, and/or had

5    knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and

6    injuries from the manufacture and sale of Fluorosurfactant Products.

7          145.    The UVTA Defendants acted with actual intent to hinder, delay and to defraud any

8    creditor of the UVTA Defendants because: (1) they were engaged and or about to engage in a

9    business for which the remaining assets of The Chemours Company were unreasonably small in

10   relation to the business and; (2) intended to incur, or believed or reasonably should have believed

11   or reasonably should have believed that the Chemours Company would incur, debts beyond its

12   ability to pay as they became due.

13         146.    The UVTA Defendants engaged in actions in furtherance of a scheme to transfer E.

14   I. DuPont de Nemours and Company's assets out of the reach of Plaintiff, and other similar parties,

15   that have been damaged as a result of UVTA Defendants' conduct, omissions, and actions

16   described herein.

17         147.    As a result of the transfer of assets and liabilities described in this Complaint, the

18   UVTA Defendants have attempted to limit the availability of assets to cover judgments for all of

19   the liability for damages and injuries from the manufacturing, marketing, distribution and/or sale

20   of Fluorosurfactant Products.

21         148.    Pursuant to Cal. Civ. Code Ann. § 3439.07, Plaintiff seeks avoidance of the transfer

22   of E. I. DuPont de Nemours and Company's liabilities for the claims brought in this Complaint

23   and to hold the UVTA Defendants liable for any damages or other remedies that may be awarded

24   by the Court or jury to the Plaintiff in this action.

25         149.    Plaintiff further seeks all other rights and remedies that may be available to it under

26   UVTA, including prejudgment remedies as available under applicable law, as may be necessary

27

28
                                         31
                        Complaint for Damages and Other Relief

1  to fully compensate Plaintiff for the damages and injuries it has suffered as alleged in this

2  Complaint.

3  **PUNITIVE DAMAGES**

4  150.   Under the applicable laws of the State of California, Plaintiff seeks punitive damages

5  due to the wanton and willful acts and/or omissions of Defendants as set forth and alleged

6  throughout this Complaint.

7  **PRAYER FOR RELIEF**

8  WHEREFORE, Plaintiff respectfully requests a trial of this Action before a jury, and that,

9  upon a favorable verdict, this Court enter judgment in favor of Plaintiff and against Defendants,

10  jointly and severally, as follows:

11  1.   Compensatory damages according to proof including, but not limited to:

12  a.  costs and expenses related to the past, present, and future investigation, sampling,

13  testing, and assessment of the extent of PFAS contamination on and within

14  Plaintiff's Property;

15  b.  costs and expenses related to the past, present, and future treatment, filtration, and

16  remediation of PFAS contamination of Plaintiff's Property;

17  c.  costs and expenses associated with and related to the removal and disposal of the

18  PFAS contamination from Plaintiff's Property; and

19  d.  costs and expenses related to the past, present, and future installation and

20  maintenance of monitoring mechanisms to assess and evaluate PFAS on and within

21  Plaintiff's Property.

22  2.   Diminished property value;

23  3.   Consequential damages;

24  4.   Punitive damages;

25  5.   Costs, disbursements, and attorneys' fees of this lawsuit;

26  6.   Pre-judgment and post-judgment interest; and

27  7.   Any other and further relief as the Court deems just, proper, and equitable.

28  32

DATED: September 29, 2021

By:

John Fiske (CA Bar 24256)
jfiske@baronbudd.com
**BARON & BUDD, P.C.**
11440 West Bernardo Court, Suite 265
San Diego, CA 92127
Telephone: (858) 251-7424

Celeste Evangelisti (CA Bar No. 225232)
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
Telephone: (214) 521-3605

Arnold Alvarez-Glasman (CA Bar 80095)
Gloria V. Ramirez (CA Bar 316993)
**ALVAREZ-GLASMAN & COLVIN**
13181 Crossroads Pkwy. North
Suite 400 – West Tower
City of Industry, CA 91746
Telephone: (562) 699-5500

*Attorneys for Plaintiff*

Complaint for Damages and Other Relief